### KINGS COUNTY LIGHTING CO. v. BARRETT et al.

(District Court, S. D. New York. December 30, 1920.)

1. **Constitutional law ⬤⟹48—Every presumption favors legislative act fixing gas rate.**

    When application is made to the statutory court, pursuant to Judicial Code, § 266 (Comp. St. § 1243), for a temporary injunction to restrain the enforcement of a gas rate made by the Legislature, every presumption is in favor of the validity of the legislative action.

2. **Gas ⬤⟹14(1)—Temporary injunction should not provide remunerative income for utility.**

    When the rate fixed by the Legislature for charges by a gas company is attacked as unconstitutional, the only relief that should be granted on preliminary injunction is one that will relieve the more acute cruelties of the situation, and yet not give the plaintiff a remunerative income.

3. **Gas ⬤⟹14(1)—Rate injunction can be dissolved for inequitable charges.**

    After a final decree restraining the enforcement of the statutory rate for gas charges, the Legislature should adopt a new schedule of charges which will be valid; but, if it fails to do so, and the gas company takes advantage of the situation to collect an inequitable rate, the injunction

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

can be vacated, under the power reserved in the decree to vacate or modify.

**4. Gas ⬳14(1)—Defendant has burden of showing rate substituted for enjoined rate is inequitable.**

On motion to vacate a permanent injunction against the enforcement of the statutory rate for gas, the burden is on defendant, who made the motion, to show that the rate charged by the gas company in lieu of the statutory rate is inequitable.

**5. Gas ⬳14(1)—Inequitable rate, requiring dissolution of injunction, must shock the conscience.**

A rate charged by a gas company in lieu of the statutory rate, against which injunction was issued, which would entitle the defendant to a vacation of the judgment because it is inequitable, must be a rate so obviously wrong that it shocks the conscience.

**6. Gas ⬳14(1)—Rate yielding 25 per cent. profit held not unconscionable.**

After a gas company had obtained a permanent injunction against the enforcement of a statutory rate as confiscatory, the establishment of a new rate which yields a 25 per cent. profit is not so grossly inequitable as to shock the conscience of a decent man, and does not require the vacation of the injunction.

In Equity. Suit by the Kings County Lighting Company against Alfred M. Barrett and others. On defendants' motion for vacation or modification of injunction. Motion denied.

Ingraham, Sheehan & Moran, Francis M. Scott, and Samuel F. Moran, all of New York City, for plaintiff.

Ely Neumann, of New York City, for defendant Public Service Commission.

Wilbur W. Chambers, Deputy Atty. Gen., for defendant Newton.

HOUGH, Circuit Judge. Discursively, perhaps, but with sufficient plainness, I am entirely ready to dispose of this motion now, and shall proceed to do it. A great deal of time has been spent in talking about what one side describes as a defiance of the law of the state of New York, and what the other side describes as oppressive conduct on the part of public officials of the state of New York, in respect of the management of this plaintiff's business. I have already intimated, and I wish to say again, that the bill of complaint in this case presented exactly one point to this court; one point which was thought to be competent for this court to answer, namely, whether the statutory rate prescribed by one or both of two connected statutes of the state of New York was, or was not, violative of the Fourteenth Amendment of the national Constitution. That is the only point that could be brought to this court. It has been held that they did so violate the national Constitution; and, that having been decided, the fact that allegations are made that one side of this litigation feels somewhat inclined to press the vantage of its victory, and the other side of the litigation feels disposed to sullenly contest the legitimate consequences of the main victory, is not a matter of any moment to this court. As a citizen, one may have his opinion; as a court, I have nothing to say.

[1] I am ready to dispose of this motion, because it appears to me to have been brought under a misconception of the nature or effect of the final decree in a rate-making case. When application is made to what has come to be known as the statutory court, pursuant to section 266 of the Judicial Code (Comp. St. § 1243), for a temporary injunction in rate-making applications, every presumption (and the emphasis cannot be too strong on the "every") is in favor of the rate, is in favor of the validity, and every other laudatory abstract noun that can be applied to the legislative action. The plaintiff, in such a case, can obtain no relief until he has affirmatively swept away the enormous advantage with which the rate-making authority enters upon such litigation.

[2] One can find numerous examples in this court, and recently, of victorious plaintiffs, yet it is my opinion (and here I speak as a member of the bar humbly entitled to my opinion, not altogether shared by my colleagues on the bench), that the only measure of relief that should be granted on preliminary injunction is one that will, it is hoped, relieve the more acute cruelties of the situation, yet certainly not put the plaintiff in a position of enjoying a remunerative income, to the end that the plaintiff (although victorious temporarily in overthrowing the enormous advantages of the rate-making authority) may still be under the sting of financial necessity to go ahead and try its case and prove it.

In this case the plaintiff has prevailed on final hearing, and I know of no reason why the consequences generally following a final decree in a cause such as this, and in ordinary litigation, also, should not ensue, viz. that the plaintiff was right and the defendants were wrong. That has passed in rem judicatam; that the rate was wrong. That it was unjust, that it was unremunerative, that it was unconstitutional has also passed in rem judicatam; and such rate is dead until that judgment is reversed. What is the result? The result ought to be that the rate-making authority should immediately make another rate that was fair. Yet I am informed by the affidavit prepared by Mr. Chambers that—

"It is not to be assumed that the Legislature of this state will, because of an inflation in prices now conclusively proven to be temporary, abandon its long-established practice of itself fixing the rates to be charged for gas."

I most heartily agree. The actions of the last few years have proved it. In other words, speaking as a citizen, it can now be seen as the deliberate practice of the only rate-making authority existing in the state of New York, namely, its Legislature, to cause one of two things to occur: Either the public utilities, in the position of the present plaintiff, must perish or become emaciated by financial disease, or else that condition of regulatory chaos shall be encouraged, which is the necessary and inevitable result of any effort on the part of judicial bodies to fix rates. They may do no more than pronounce upon the results of an existing rate.

[3] That is all I am judicially interested in, and I put that in the opinion in this case. I did say that, if this plaintiff "endeavors to

charge and collect a rate which is inequitable, this court could vacate its injunction." That passed into final decree, not in those words, but substantially in the ordinary form, viz.:

"That any of the parties defendant may apply upon notice at the foot of the decree to vacate or modify the foregoing injunction, if it can be shown that by change in conditions the statutory rate is no longer confiscatory in its effect under such new conditions."

Viewed, then, in its most generous aspect, the opinion, plus the decree, gave leave to proper parties either to apply in the strict language of the decree which I have just read, or upon the larger, looser ground, that the successful plaintiff was acting in an inequitable manner.

[4] But whether such application be made in one form or another, the fact remains that the burden of proof, the obligation to affirmatively show its right, rests upon the moving party, just as it did upon the plaintiff when the action was begun. It is an error, a fundamental error, to come into this court and nibble at this and that sum of money. It is all an endeavor to make out of the court a rate-making body; to supply the neglect, the omission, which the state of New York has for some years deliberately chosen to create, maintain, and extend, in respect of rate-making powers within this commonwealth.

So, in view of the proof offered upon this hearing, which is inadequate, unsubstantial, and insufficient to maintain the affirmative in the cause of action substantially propounded by the moving papers, I have no hesitation in denying the motion.

I will go somewhat further, because as a trier of facts I am not much moved either by the present ex parte criticism on the part of the moving defendants or the ex parte showing on the part of the answering plaintiff. It was my duty to listen to exhaustive argument on the master's report in this case. Since then it has been my further duty to listen to extensive argument with respect to the affairs of (I forget how many) other gas companies within the southeastern corner of this state.

[5, 6] I consider the word "inequitable," in the present connection, to mean something so obviously wrong that it shocks the conscience of a fairly decent man, who happens to be the chancellor. I believe that, at the present time and for a time in the future concerning which I cannot venture to even form an opinion, the most favorably situated gas-making concern within the limits of the city of New York cannot reasonably expect to make and distribute gas and pay interest (at rates now ridiculously low) upon the money it has borrowed in the past, for less than $1.20 per unit; and this gas company, I am sure, is by no means the most favorably situated within the city's limits.

2. I am also of the opinion that a 25 per cent. profit (which is the difference between $1.20 and $1.50) is as a profit on anything, not so grossly inequitable as to shock the conscience of a decent man.

For those reasons, the motion is denied.